STATE OF NEBRASKA, APPELLEE, V. MARK W. THOMPSON, APPELLANT.

255 N. W. 2d 880

Filed July 13, 1977. No. 41205.

T. Clement Gaughan and George R. Sornberger, for appellant.

Paul L. Douglas, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

The defendant was charged with first degree murder in the death of Thomas E. Smith, Jr. After the case had been set for trial the State obtained leave to file an amended information charging second degree murder to which the defendant pleaded guilty. After an evidentiary hearing under section 29-2027, R. R. S. 1943, to determine the degree of the crime, the trial court found the defendant guilty of second degree murder and accepted the plea of guilty. A

presentence investigation was made and the defendant was sentenced to life imprisonment.

The defendant has appealed and contends the sentence imposed was excessive.

The defendant is 26 years of age, and married but separated from his wife. He has completed 2 years of college and was employed at the time of the offense. He is partially disabled as a result of an injury to his right knee while serving in Viet Nam.

The defendant had attended a party at the home of his sister, Rosie Hicks, on the evening of April 9, 1976. During the evening an argument developed, a fight broke out, and several guests subdued the defendant by getting him down on the floor. The defendant was scratched and bruised in the fight. According to the defendant, a guest named Wally Morris made some threats that he would kill the defendant the next time he saw him.

The defendant worked until noon the following day. He commenced drinking and smoking marijuana during the afternoon. He purchased a .22 caliber semiautomatic rifle and some ammunition and then returned to his apartment. At about 8 p.m. Betty Mae Thompson, his niece and sister by adoption, came to see him. She said that he was crying and upset over what had happened at the party the night before; that the defendant said he was going to kill her mom and her cousin, Pam Thompson, and showed her the rifle he had purchased; and that he wanted to talk to Stanley Proctor, a friend of his. She then went to Proctor's apartment and induced him to go see the defendant.

Proctor stated that he found the defendant crying and that the defendant said he had to go over to his sister's house to talk to her. · The defendant and Proctor then went to Mrs. Hicks' house.

The defendant walked into his sister's house carrying the loaded rifle. There were a number of people in the house including Mrs. Hicks, Thomas E. Smith,

Jr., the victim, and other members of the family. The defendant pointed the gun at Mrs. Hicks and said he wanted to talk to her about what had happened the night before. He also pointed the rifle at several other persons in the room including Pamela Thompson and Mary Virgil, a friend of the victim. Smith, who was also known as "Tony," pushed or knocked the defendant against the wall in an effort to disarm him. Proctor intervened and pulled Tony away from the defendant who regained his footing and the rifle. Tony and the defendant then had a brief conversation. Tony had started to leave the room when the defendant shot him. The bullet struck Tony in the chest near his right shoulder severing his trachea and several arteries. Tony ran out of the house, fell to the ground, and died.

The foregoing is a brief summary of the evidence as to what happened at the time of the killing. There is conflict in the testimony of the various witnesses as to the details of what happened, but there is no dispute about the essential facts.

The defendant admitted the killing but attempted to claim self-defense. The evidence is clear that Tony was unarmed, the defendant was in no danger at the time he shot Tony, and the killing was a deliberate act. There is no merit to the claim of self-defense. The evidence fully supports the finding that the defendant was guilty of second degree murder.

The defendant contends there are mitigating factors in the case which require the sentence be reduced to a term of years. These factors include the absence of a prior criminal record, the defendant's military service, his employment record, and his continuing efforts to obtain an education. These, of course, are factors which weigh in favor of the defendant.

The circumstances of the crime itself, however, weigh heavily against the accused. He demonstrated a violent nature during the party on the night pre-

ceding the killing. On the following day he purchased the gun and ammunition which he took to his sister's house where he pointed the loaded rifle at several members of the family. Then, with no justification whatever, he deliberately killed Tony, who had been his friend for many years. Under these circumstances we are unable to say that the trial court abused its discretion in imposing the maximum sentence.

The judgment of the District Court is affirmed.

AFFIRMED.